THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES
D. WILSON, Appellant.

Fourth Department, January 29, 1985

### APPEARANCES OF COUNSEL

*John P. Mansour* for appellant.

*Howard Relin, District Attorney* (*Joan Psaila* of counsel), for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

We are concerned on this appeal with the power of the trial court to excuse a sworn juror during the process of impaneling the jury and outside the presence of the defendant and defense counsel. The prosecution in this case resulted from an armed robbery which occurred on September 12, 1981.

The trial commenced on November 29, 1982 and during the course of the first day of *voir dire* four jurors were selected and

sworn. Upon the resumption of jury selection on November 30, 1982, juror number three was absent. The record reflects that at this time the Trial Judge was advised that a person he had excused from jury service had been one of the sworn jurors. He then informed both counsel and defendant that upon returning to his chambers around 5:10 the previous evening, "I learned from my secretary that a long distance telephone call had been received from the employer of juror number three * * * that she was to be reporting to New York on a very important matter, a matter that required her presence. It was an emergency matter. Both counsel were gone. I indicated to her employer that I would take the matter up with the Commissioner of Jurors, who had left * * * This morning I also spoke to the Acting Commissioner of Jurors and indicated that I would be excusing her, and I did excuse her." Defendant's attorney then asserted that "our jury selection strategy was an integrated strategy and * * * [juror number three] formed part of it. With her now absent it now changes the composition of the jury and our selection procedure." He then moved to declare a mistrial. Although the court denied the motion, defendant was given an additional peremptory challenge. At the conclusion of the trial, the jury returned a verdict finding defendant guilty of robbery in the first and second degree and grand larceny in the second degree.

Prior to sentencing, defendant moved to renew his motion to declare a mistrial based upon the improper excusal of the juror.[*] At this time the trial court placed on the record a further explanation that, "[t]he [excused] juror was being called by the then governor elect, that she was to be part of the committee with her employer for the formation of a new administration." Defense counsel reiterated that, "[o]ur jury selection process was a fairly complicated one and I had discussed this with [defendant] for over a year, perhaps maybe more. We had had the services of a psychologist and another member of the community. It was an integrated process. Each juror was selected with their particular qualifications in mind". The court concluded that the defendant was not prejudiced by the excusal of a juror, particularly since it occurred near the beginning of the jury selection process, and denied the motion.

Defendant argues that since the excusal occurred in his absence, he was denied the right to be "personally present during the trial of an indictment" (CPL 260.20). He also claims that the excusal of the juror constituted a violation of the statute (CPL

---

[*] A declaration of a mistrial after the verdict is unauthorized (*People v Collins,* 72 AD2d 431; *People v Banks,* 59 AD2d 649) but the trial court could have treated the motion as one to set aside the verdict pursuant to CPL 330.30.

270.15, subd 3) authorizing the court to discharge a sworn juror for "illness or other incapacity". The People contend that this court need not reach the merits of these claims inasmuch as defendant was not prejudiced by the excusal since no evidence had been offered, jury selection had not concluded, and the defendant was granted an additional peremptory challenge. In sum, the People argue that no prejudice resulted from the excusal of this particular juror since, at worst, one impartial juror was replaced by another impartial juror.

A defendant has a constitutional and statutory right to be personally present during the trial of an indictment. This right is a condition of due process guaranteed by the Federal and State Constitutions (US Const, 6th, 14th Amdts; NY Const, art I, § 6; see *Snyder v Massachusetts,* 291 US 97; *People v Trendell,* 61 NY2d 728; *People v Ciaccio,* 47 NY2d 431; *People v Thomas,* 98 AD2d 968). CPL 260.20 codifies this right to be present "during the trial", which necessarily encompasses all proceedings involving the impaneling of the jury (*People v Ciaccio, supra; People v Mullen,* 44 NY2d 1, 4; *Maurer v People,* 43 NY 1, 3; cf. Fed Rules Crim Pro, rule 43 [in US Code, tit 18, Appendix]).

The defendant's right to be present is guaranteed, subject to forfeiture for disruptive and disorderly conduct (CPL 260.20), "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge" (*Snyder v Massachusetts,* 291 US 97, 105-106, *supra,* quoted in *People v Ciaccio,* 47 NY2d 431, 436, *supra; People ex rel. Bartlam v Murphy,* 9 NY2d 550, 553; *People v Eadie,* 83 AD2d 773, 774; see, also, *People v Mullen,* 44 NY2d 1, 4-5, *supra*). The derivative statutory right contained in CPL 260.20 is subject to the same test (*People v Mullen, supra*).

The privilege of presence must bear a reasonably substantial relation to a defendant's opportunity to defend and is not constitutionally assured where his presence "would be useless, or the benefit but a shadow." (*Snyder v Massachusetts,* 291 US 97, 106-107, *supra.*) His right to be present at a particular trial stage must bear a substantial relation to the fullness of his opportunity to defend against the charge and be heard. Thus, while defendant obviously has a right to be present during *voir dire,* the in-chambers questioning of a seated juror for possible disqualification does not necessarily constitute a material part of the trial requiring his presence (see *People v Mullen,* 44 NY2d 1, *supra; People v Andriani,* 67 AD2d 20, cert den *sub nom. Boutureira v New York,* 444 US 866). On the other hand, it is

error for the court to instruct the jury or to communicate with them concerning alleged jury tampering during the course of deliberation in the absence of defendant and his counsel (*People v Ciaccio,* 47 NY2d 431, *supra; People v Eadie,* 83 AD2d 773, *supra; People v Saccomanno,* 25 AD2d 528). "Thus, whether the mandate requiring the presence of a defendant at the trial of his indictment stems from due process or statute, literal application of its directive is not demanded. Common sense dictates that substantial performance of its terms is sufficient." (*People v Mullen, supra,* p 5.)

There is no doubt that jury selection is a crucial stage in a criminal proceeding. The defendant has a right "to a particular jury chosen according to law, in whose selection he has had a voice" (*People v Ivery,* 96 AD2d 712; see *Hildreth v City of Troy,* 101 NY 234, 239) which in a criminal case shall consist of "[t]he first twelve members of the panel returned for the term who appear as their names are drawn and called, and who are not excluded" (CPL 270.05, subd 2). This is all subject, however, to the power of the trial court to excuse prospective jurors (Judiciary Law, § 517, subd [b]) and to discharge sworn jurors either before (CPL 270.15, subd 3) or after (CPL 270.35) a full trial jury is sworn.

Obviously, the trial court has broad discretion to control the jury selection process (e.g., *People v Pepper,* 59 NY2d 353). The defendant cannot prevent the exercise of that discretion nor, in the absence of abuse, can its exercise be successfully challenged. Thus, if a juror is discharged by the court in the proper exercise of discretion the defendant cannot claim a right to that particular juror and no prejudice which impinges on his opportunity to defend results. However, "[t]he defendant should have an opportunity to object to requests for excuses from the jury and to make a record of the proceedings" since "even though such dismissals are within the discretion of the trial judge and do not require the consent of the parties, his discretion is always subject to review for abuse, and a record is necessary for such review." (*United States v Gay,* 522 F2d 429, 435.)

■ We conclude that the defendant was entitled to be present and that it was error for the trial court to "excuse" the juror in his absence. Nevertheless, "[w]hile it is clearly the better practice to have defense counsel" and defendant "present when such an excusal is granted" under the circumstances here the error which unintentionally violated the defendant's rights may have been harmless error (*United States v Dominguez,* 615 F2d 1093, 1096; see *United States v Yonn,* 702 F2d 1341, 1345, cert den *sub nom. Weeks v United States,* __ US __, 104 S Ct 283; see, also,

*United States v Florea,* 541 F2d 568, 572-573, cert den 430 US 945, reh den 431 US 925; *Rogers v United States,* 422 US 35, 40).

■ We do not reach that issue here, however, because the judgment must be reversed since the record created by the trial court reveals that the court improperly discharged a sworn juror. Pursuant to section 517 of the Judiciary Law, the trial court may, in its discretion, excuse a prospective juror from jury service (Judiciary Law, § 517, subd [b]), and in determining an application from a prospective juror to be excused it may consider facts indicating that attendance for jury service would cause "undue hardship or extreme inconvenience" (Judiciary Law, § 517, subd [c]). Once the process of selecting a jury has begun, however, the trial court has only limited authority to discharge a sworn juror. CPL 270.15 (subd 3) provides that "[i]f before twelve jurors are sworn, a juror already sworn becomes unable to serve by reason of illness or other incapacity, the court must discharge him". Up to this stage of the proceedings no other ground for excusing or discharging a sworn juror is provided. The phrase "illness or other incapacity" is not defined in the CPL, but recent authority indicates that "these words should be given their common, everyday meaning and a court should exercise its judgment and discretion in deciding whether a juror is unable to continue serving" (*People v Pierce,* 97 AD2d 904, 905; see *McShall v Henderson,* 526 F Supp 158, 162; McKinney's Cons Laws of NY, Book 1, Statutes, § 94). Here the excused juror was not ill, so the only ground to justify discharging her from continued service would be if the work emergency amounted to an incapacity leaving her "unable to serve". We find nothing to support the argument that a sworn juror's work-related duties qualify as an incapacity within the meaning of CPL 270.15. On the contrary, it appears that such circumstances may properly be considered by the trial court only on an application to excuse a prospective juror rather than a sworn juror. Since the Legislature determined that only illness or other incapacity may be considered in an application to discharge a sworn juror, the trial court here was without power to excuse this juror from jury service and the defendant was deprived of his constitutional and statutory right "to a particular jury chosen according to law" (*People v Ivery,* 96 AD2d 712, *supra;* see *Hildreth v City of Troy,* 101 NY 234, 239, *supra*). The trial court "cannot in its discretion, or capriciously, set aside jurors as incompetent, whom the law declares are competent, and thus limit the selection of the jury to jurors whose names may be left. If this is done a legal right is violated, for which an appellate court will give redress." (*Hildreth v City of Troy,* 101 NY 234, 239, *supra.*)

The trial court concededly did not rely on CPL 270.15 as authority to excuse this juror but instead sought to analogize the circumstances to a situation falling within the scope of CPL 270.35 which directs the court to discharge a juror after the full trial jury has been sworn who "is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service". However, incapacity, not unavailability, is the standard under CPL 270.15 (subd 3) and we cannot graft onto that section the broader language found in CPL 270.35, which does not apply to the facts in this case (McKinney's Cons Laws of NY, Book 1, Statutes, § 240). Whatever discretionary power to excuse or discharge sworn jurors existed under section 371 of the former Code of Criminal Procedure (see *People v West,* 38 AD2d 548, affd no opn 32 NY2d 944), the language of that section was substantially changed when the CPL was enacted and we must presume that the Legislature intended to limit the court's authority to discharge sworn jurors before a full panel is selected to illness or other incapacity which renders the juror unable to serve. In any event, the juror's unavailability for continued service was not shown on this record; therefore, her discharge was improper under either section (see *People v Karadimas,* 99 AD2d 652). Thus, we hold that the trial court's authority to discharge a sworn juror before a full panel is selected is limited by CPL 270.15 to illness or other incapacity which renders the juror unable to serve. The reasons assigned here did not fall within that category nor did the trial court profess to act within the strictures of such statutory authority.

We have examined the other issues raised by the defendant and find them to be without merit. In particular, we note that he failed to preserve for review any of the acts now claimed to constitute prosecutorial misconduct.

Accordingly, the judgment of conviction should be reversed, on the law, and a new trial granted.

DILLON, P. J., CALLAHAN, DOERR and DENMAN, JJ., concur.

Judgment unanimously reversed, on the law, and new trial granted.