COMMONWEALTH vs. DEREK A. WINBUSH.

Suffolk.  October 20, 1982. — November 22, 1982.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Jury and Jurors. Practice, Criminal,* Deliberation of jury, Mistrial.

Action by the judge in a criminal case did not amount to coercion of the
jury prohibited by language in G. L. c. 234, § 34, which provides that
a jury having returned to court twice without agreement on a verdict
may not be sent out for further deliberation without their consent,
where the jury's first return to court followed only a brief period fall-
ing short of the "due and thorough deliberation" contemplated by § 34
and their second return was ostensibly for dismissal at the close of busi-
ness hours; only their third return to court, at noontime of the follow-
ing day, at which time the judge instructed them in accordance with
*Commonwealth* v. *Rodriquez,* 364 Mass. 87 (1973), could be counted as
one of the two returns required to bring § 34 into operation.  [682-684]

INDICTMENTS found and returned in the Superior Court
Department on April 17, 1981.

The cases were tried before *Sullivan, J.*

*Arnold R. Rosenfeld* for the defendant.

*Muriel Ann Finnegan,* Assistant District Attorney (*Ed-
ward M. Burns,* Assistant District Attorney, with her) for
the Commonwealth.

GREANEY, J.  Winbush, convicted of assault and battery
by means of a dangerous weapon and unlawfully carrying a
handgun, contends that the trial judge coerced the jury into
reaching a verdict in violation of G. L. c. 234, § 34.  That
statute provides as follows: "If a jury, after due and thor-
ough deliberation, return to court without having agreed on
a verdict, the court may state anew the evidence or any part
thereof, explain to them anew the law applicable to the case
and send them out for further deliberation; but if they re-
turn a second time without having agreed on a verdict, they

shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."

After a three-day trial, deliberations commenced at 12:07 P.M. on November 5, 1981. At 2:05 P.M., the judge received a note from the jury indicating that a unanimous verdict could not be reached because "[m]ost of us feel the evidence brought forward to be inadequate." The note also stated the jury's opinion "that lengthy discussions could cause some of us to make a decision that we may regret and not be able to live with morally." The judge discussed the situation with counsel in the lobby, where he observed that the jury had deliberated only a short time before sending the note. It was agreed that the judge would advise the jury that the brief time actually spent deliberating did not signify an adequate effort to resolve their differences, that deliberations should continue, and that, while the jury were not required to reach a verdict, they were obliged to make a reasonable effort to do so. At 2:35 P.M., the jury was called to the courtroom, where the judge told them that "the period of time in which you announced an inability to resolve this [case] is not adequate." The judge then gave the supplementary instructions previously agreed upon and sent the jury out to resume deliberations.

At 4:00 P.M., the jury reentered the courtroom. At that time, the judge advised counsel at a bench conference that he had "another little notice" that the jury still could not reach a verdict. He informed counsel of his intention to send them home until the following day. Defense counsel objected, requesting that deliberations continue. The judge denied the request, stating that he had "already contracted with [the jury] to keep business hours." Defense counsel's motion for mistrial was denied. The judge then admonished the jury not to discuss the case with anyone and sent them home.

Deliberations resumed the following morning (November 6). At 12:30 P.M., the jury sent a note to the judge which read: "in good conscience, we, the jury, are certain a unanimous verdict cannot be reached." The judge advised counsel

of his inclination to give the charge recommended in *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973). After a request for supplementation of the *Rodriquez* charge was rejected, defense counsel objected to further deliberations as a violation of G. L. c. 234, § 34. The jury were instructed in accordance with *Rodriquez* and retired at 12:47 P.M. Guilty verdicts were returned at 2:25 P.M.

General Laws c. 234, § 34, stands guard to prevent jurors, after "due and thorough" deliberations, from being coerced into reaching a verdict in the face of views conscientiously reached and held. *Commonwealth* v. *Valliere*, 366 Mass. 479, 496 (1974), makes it clear, however, that "it is open to the judge to determine" whether the jury's deliberations have been "due and thorough"; an assessment necessarily calling for an evaluation of several considerations, including the complexity of the case, the extent of evidentiary conflict on material issues, and the total length of time the jury has spent in attempting to resolve those conflicts. See also *Thames* v. *Commonwealth*, 365 Mass. 477 (1974) (judge has reasonable discretion to determine when mistrial should be declared because of deadlock).

Despite the expression of disagreement in the jury's first note on November 5, the judge could properly have concluded, as he did in different words, that the brief time spent in deliberations did not amount to "due and thorough" consideration of the case.[1] The evidence on the pivotal issue of identification was contested and required careful scrutiny. The judge could reasonably have assumed that differing views of the proof of identification, expressed perhaps with

---

[1] The judge fixed that time at twenty-five minutes. Defense counsel suggests that the period is closer to two hours because the jury left the courtroom at 12:07 P.M. and the judge received their note at 2:05 P.M. At the close of his charge the judge mentioned lunch for the jurors which would be eaten in the jury room. We think the judge's assessment of time probably took into account that the jury had not deliberated while they ate lunch or while they waited for him to return from lunch to receive their note. Thus, on the record before us, we cannot assume that all of the time after the jury left and prior to the judge's receipt of their note was spent deliberating the case.

intransigence at the commencement of deliberations, might give way, after further discussion, to agreement on a single verdict. We note that counsel agreed with the judge that further deliberations were appropriate. The judge's instructions at that point were neutral, carefully described to the jury the need for a reasonable exchange of views, and contained no coercive sting. This return, as the judge found, did not count towards bringing the statute into operation.

The contents of the jury's "little notice" at 4:00 P.M. on November 5 (which may have been communicated to the judge orally by a court officer) are not in the record. Both counsel appear to agree, however, that the message was ambiguous. Instead of pronouncing continued deadlock, the message may well have signified the jury's need for more time to deliberate. In these circumstances, sending the jury home for the day was a matter within the judge's discretion. It was also consistent with Mass.R.Crim.P. 20(e)(3), 378 Mass. 892 (1979), see *Commonwealth* v. *Sperrazza*, 379 Mass. 166, 170 (1979), and with the judge's previous indication that they would work only normal court hours. Moreover, the jury's departure was accompanied only by the usual admonition not to discuss the case until deliberations recommenced. We think that the judge's denial of defense counsel's request to continue deliberations was prudent because it avoided the potentially coercive tactic of forcing the question. Compare *People* v. *Eadie,* 83 A.D. 2d 773 (N.Y. 1981). The denial of the defendant's motion for mistrial was within the judge's discretion. *Thames* v. *Commonwealth,* 365 Mass. at 479-480. This meeting cannot be considered a return for purposes of G. L. c. 234, § 34.

Thus, the first return, which would count towards triggering § 34, occurred on November 6, when the jury communicated their inability to reach a unanimous verdict. In view of the length of the jury's deliberations to that time, and identification as the only seriously contested issue, the judge did not act prematurely or without cause in responding with the *Rodriquez* charge which he delivered without variation or amplification. See *Commonwealth* v. *Breg-*

*nard,* 3 Mass. App. Ct. 489, 493 (1975). Compare *Commonwealth* v. *Brown,* 367 Mass. 24, 31-32 (1975) (disapproval of instructions which suggested that jurors in minority might be thought "absolutely stubborn" and which told jury retrial would be expensive); *Jenkins* v. *United States,* 380 U.S. 445, 446 (1965) (jury coerced when told, after reporting deadlock, that "[y]ou have got to reach a decision in this case"). After consideration of the entire record, and keeping in mind that "[e]ach case of this type depends . . . on the particular facts," *Thames* v. *Commonwealth,* 365 Mass. at 479, we conclude that the defendant has not shown that G. L. c. 234, § 34, has been violated.

*Judgments affirmed.*