NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-445

COMMONWEALTH

vs.

ROSALIE A. RIVAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the District Court, a jury found the defendant, Rosalie A. Rivas, guilty of one count of malicious damage to a motor vehicle, in violation of G. L. c. 266, § 28 (a), and one count of assault and battery by means of a dangerous weapon (ABDW), in violation of G. L. c. 265, § 15A (b). On appeal, the defendant contends that the judge abused his discretion in determining that the jury's deliberations had not been "due and thorough" when they first reported an inability to reach a verdict, and therefore the judge erred in sending the jury out to continue deliberations for a second time without their consent. For the reasons that follow, we affirm.

Background.  We recite certain facts the jury could have found.  On July 8, 2022, while stopped in his motor vehicle at a red light, the victim saw the defendant, who was driving a green Honda CR-V, throw an empty plastic bottle out of her vehicle.  The victim then got out of his vehicle, retrieved the bottle, and "placed the bottle in the back of the [Honda CR-V]."  As the victim returned to his vehicle, the defendant got out of her vehicle and rapidly approached him while screaming profanities and holding a mallet.  When the defendant reached the victim, she struck him in the face with the mallet.  After the victim retreated, the defendant used the mallet to repeatedly strike the hood of the victim's vehicle and smash both side mirrors.  The defendant then returned to her vehicle and drove off.

The case was tried on June 12, 2024.  Four witnesses testified, including the defendant.  The jury began deliberations at approximately 2:45 P.M.  At 3:16 P.M., the jury sent a note with three questions[1] (note one) to the judge.  After consulting with counsel, the judge addressed the questions with the jury, and the jury continued their deliberations at 3:37 P.M.  At 3:42 P.M., the jury sent a second note (note two)

_____

[1] The questions were as follows:  (1) "Can we consider assault [and] battery charge without weapon?"; (2) "What was the amount for property damage for the car and whether there was civil settlement?"; and (3) "Can we get Google map image of the intersection?"

to the judge stating that they "all agree on the malicious damage to a motor vehicle charge and are 5:1 on [ABDW].  We won't be able to agree on this charge.  What do we do?"  The judge told counsel, "unless there's an objection from the other side, I'm just going to give them an encouragement at this time to continue with their deliberations."  He stated that the jury had "only been out a short time" and had "c[o]me back with a question."  He told counsel that he would provide the Tuey-Rodriguez instruction[2] if the jury faced another deadlock.  Defense counsel did not object and agreed to a reading of the Tuey-Rodriguez instruction if the jury came back deadlocked.  At 4:05 P.M., the jury submitted a third note (note three) to the judge with another question.[3]  At 4:09 P.M., the judge told the jury that he would not answer the question, and the jury continued their deliberations at 4:11 P.M.  At 4:39 P.M., the jury submitted a fourth note (note four) stating that they "[would not] be able to come to consensus on [the] assault [and] battery with a dangerous weapon charge."  At 4:40 P.M., the judge read the jury the Tuey-Rodriguez instruction.  At

---

[2] See Commonwealth v. Tuey, 8 Cush. 1, 2-3 (1851); Commonwealth v. Rodriguez, 364 Mass. 87, 101-102 (1973).

[3] The question was the following:  "Did Rosalie A[.] Rivas press charges against [the] victim?"

3

4:50 P.M., the jury resumed their deliberations.  At 5 P.M., the jury returned guilty verdicts on both charges.

Discussion.  If a jury, "after due and thorough deliberation," cannot agree on a verdict, the judge may send them out for further deliberation; but if they return a second time without having agreed on a verdict, the judge shall not "send [them] out again without their consent, unless the jury ask for some further explanation of the law."  Commonwealth v. Jenkins, 416 Mass. 736, 737 (1994).  "The decision as to when the jury's deliberations have been 'due and thorough' lies within the discretion of the judge."  Commonwealth v. Carnes, 457 Mass. 812, 826 (2010).  Such a determination requires a judge to consider "the complexity of the case, the extent of evidentiary conflict on material issues, and the total length of time the jury has spent in attempting to resolve those conflicts."  Commonwealth v. Winbush, 14 Mass. App. Ct. 680, 682 (1982).

The defendant argues that the judge abused his discretion in concluding that the jury's deliberations were not "due and thorough" at the time the jury sent note two, when they informed the judge that they could not agree on the ABDW charge.  The defendant further argues that the judge violated G. L. c. 234A, § 68C, by failing to obtain the jury's consent to continue deliberating after they sent note four, when they stated for a

4

second time that they could not reach a consensus on the ABDW charge.  Because the defendant did not object when the judge instructed the jury to continue deliberating, and agreed to the reading of a Tuey-Rodriguez instruction should the jury come back deadlocked again, "we review to determine whether any error created a substantial risk of a miscarriage of justice." Commonwealth v. Abdul-Alim, 91 Mass. App. Ct. 165, 171 (2017). We discern no error.

Four witnesses testified at the trial, and the jury deliberated for less than one hour before they told the judge that they could not agree on the ABDW charge.  As the judge stated to counsel, the jury had "only been out a short time" because of the interruption to their deliberations arising from their three questions in note one.  The judge did not abuse his discretion by finding that the deliberations were not "due and thorough" and encouraging them to continue with their deliberations.  See Winbush, 14 Mass. App. Ct. at 682.

When the jury came back deadlocked a second time, the jury had been deliberating for almost two hours and had sent note three, which contained a new question, demonstrating that they had continued deliberating.  By giving the jury the Tuey-Rodriguez instruction after they told the judge for the second time that they were deadlocked on the ABDW charge, the judge implicitly found that the jury's deliberations had been "due and

5

thorough."  Jenkins, 416 Mass. at 738.  Because that was the jury's first report of deadlock after "due and thorough deliberation," the judge did not err in sending the jury out to deliberate further without their consent or in giving the Tuey-Rodriguez instruction.  See Commonwealth v. Keane, 41 Mass. App. Ct. 656, 659 (1996).

Judgments affirmed.

By the Court (Desmond, Tan & Wood, JJ.[4]),

*Paul Little*

Clerk

Entered:  April 21, 2026.

---

[4] The panelists are listed in order of seniority.